UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---

IN RE:
ROBERT D. COLMAN,                              Chapter 7
        DEBTOR.                         Case No. 12-15855-WCH

---

HAROLD B. MURPHY, CHAPTER 7
TRUSTEE,
        PLAINTIFF,
                              Adversary Proceeding
v.                                         No. 14-1054

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP,
        DEFENDANT.

---

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matters before the Court are the cross-motions for summary judgment filed by the plaintiff Harold B. Murphy (the "Trustee"), the Chapter 7 trustee of the estate of Robert D. Colman (the "Debtor"), and the defendant Perry, Johnson, Anderson, Miller & Moskowitz LLP ("PJAMM"). The issue presented is whether PJAMM has a valid charging lien against the stock and related interests in a New York cooperative apartment for attorney's fees incurred in a State Court proceeding in which the Debtor and his former spouse both sought to enforce a marital settlement agreement. For the reasons set forth below, I will deny PJAMM's motion for summary judgment and grant the Trustee's motion for summary judgment.

1

## II. BACKGROUND

The facts are not in dispute. On or about March 27, 2006, the Debtor and his then wife, Jane Colman ("Mrs. Colman"), purchased stock and related interests (the "Cooperative Interests") in a cooperative apartment located at Unit 9B, 320 East 57th Street in New York City.[1] After thirty-six years of marriage, the Debtor commenced a divorce action against Mrs. Colman in the Superior Court of California, County of Sonoma (the "State Court") on November 12, 2006.[2] On August 24, 2007, the Debtor and Mrs. Colman entered into a Marital Settlement Agreement (the "Settlement Agreement").[3] As part of the division of assets, the Debtor was awarded the Cooperative Interests.[4] Specifically, the Settlement Agreement provided:

> B. Jane agrees to and by the Agreement she does hereby sell, transfer, assign, quitclaim and convey unto Robert as his sole and separate property, and she does hereby forever waive and release any and all rights in or to the following community assets:
>
> 1. The apartment located at 320 57th Street in New York City, New York with encumbrance thereon.[5]

The Settlement Agreement also required the Debtor to pay spousal support to Mrs. Colman.[6] On September 20, 2007, the State Court entered a judgment incorporating the Settlement Agreement.[7]

---

[1] Joint Statement of Agreed Facts (the "Agreed Facts"), Docket No. 14 at ¶ 4.

[2] Agreed Facts, Docket No. 14 at ¶5; Ex. A, Docket No. 14-1.

[3] Agreed Facts, Docket No. 14 at ¶ 6; Ex. A, Docket No. 14-1.

[4] *Id.*

[5] Ex. A, Docket No. 14-1 at ¶ 3(B)(1).

[6] Agreed Facts, Docket No. 14 at ¶ 6; Ex. A, Docket No. 14-1 at ¶ 5.

[7] Agreed Facts, Docket No. 14 at ¶ 6; Ex. A, Docket No. 14-1 at 1-2.

Despite the terms of the Settlement agreement, the Debtor did not pay Mrs. Colman spousal support, and she did not take any steps to convey her title interest in the Cooperative Interests to him. On June 30, 2010, Mrs. Colman brought an enforcement action (the "Enforcement Action") in the State Court seeking, *inter alia*, the payment of past due spousal support and a determination that she held an interest in property the Debtor failed to list in his financial disclosures.[8] The Debtor filed an opposition in the Enforcement Action in August, 2010.[9] Initially, the Debtor was represented by counsel other than PJAMM, but later opted to change counsel.

On October 21, 2010, the Debtor executed an engagement letter retaining PJAMM to represent him in the Enforcement Action (the "Engagement Letter").[10] The Engagement Letter, which appears to be a standard form letter applicable to a variety of engagement possibilities, contained, *inter alia*, the following provision regarding the creation of a lien to secure PJAMM's fees incurred in the Enforcement Action:

> ATTORNEY'S LIEN: Attorney will have a lien for attorney fees and costs advanced on all claims and causes of action that are subject of his/her representation of Client under this agreement and on all proceeds of any recovery obtained (whether by settlement, arbitration award, or court judgment). Client agrees to pay Attorney and hereby gives Attorney a lien upon any money or property awarded to Client in this proceeding for any sums due under this Agreement.[11]

I note that the final paragraph of the Engagement Letter invited the Debtor to "review this letter with another attorney or anyone else you choose."[12]

---

[8] Agreed Facts, Docket No. 14 at ¶ 7; Ex. B, Docket No. 14-2.

[9] Agreed Facts, Docket No. 14 at ¶ 8.

[10] Agreed Facts, Docket No. 14 at ¶ 9; Ex. C, Docket No. 14-3.

[11] Ex. C, Docket No. 14-3 at 4.

[12] *Id.* at 5.

The Engagement Letter does not expressly set forth the scope of the representation, but the parties agree that in addition to representing the Debtor in his defense against the Enforcement Action, PJAMM sought to modify the Debtor's spousal support obligation and to enforce the transfer of the Cooperative Interests to the Debtor.[13] On October 27, 2010, PJAMM was substituted as counsel in the Enforcement Action.[14]

Ultimately, the Enforcement Action, including the additional relief sought by the Debtor, was tried in the State Court over eight days between November, 2011, and May, 2012.[15] On June 29, 2012, the State Court dictated its preliminary statement of decision.[16] The State Court: (1) found that the Debtor concealed assets and awarded those assets to Mrs. Colman; (2) denied the Debtor's request to modify his spousal support obligation; (3) determined the outstanding spousal support arrears due Mrs. Colman to be approximately $40,000.00; and (4) awarded Mrs. Colman $125,000.00 in attorney's fees as a sanction for the Debtor's lack of disclosure. Additionally, the State Court took two actions with respect to the Cooperative Interests.[17] First, the State Court ordered that all amounts due Mrs. Colman would be secured by the Debtor's "interest in the New York apartment."[18] Second, the State Court held that until such time that the Debtor satisfied these amounts in full, the Mrs. Colman's "obligation [under the Settlement Agreement] to sign over the New York apartment is stayed."[19]

---

[13] Agreed Facts, Docket No. 14 at ¶ 10.

[14] *Id.*

[15] *Id.* Specifically, the trial took place on November 9, 2011, November 15-16, 2011, November 22-23, 2011, February 20, 2012, February 28, 2012, and March 2, 2012. Ex. G, Docket No. 14-7 at 1.

[16] Agreed Facts, Docket No. 14 at ¶ 11; Ex. D, Docket No. 14-4.

[17] Ex. D, Docket No. 14-4.

[18] *Id.* at 7:2-3; 8:14-16.

[19] *Id.* at 7:4-11.

4

On July 10, 2012, before a final judgment in the Enforcement Action entered, the Debtor filed a voluntary Chapter 7 petition.[20] The Trustee was duly appointed the following day.[21]

On October 18, 2010, Mrs. Colman filed a motion seeking relief from stay to conclude the Enforcement Action.[22] On November 1, 2010, the Trustee filed a limited objection, agreeing that the stay should be lifted to allow a resolution of the Enforcement Action, but opposing the entry of any order affecting property of the estate.[23] Ultimately, Mrs. Colman and the Trustee submitted an agreed order which I entered on November 21, 2012.[24]

On December 17, 2012, Mrs. Colman filed a proof of claim in the amount of $489,356.30, of which she asserted $173,990.00 was entitled to priority treatment pursuant to 11 U.S.C. § 507(a)(1).[25] As will be discussed below, the Trustee did not file an objection to this claim, but apparently discussed his objections regarding the purported transfer of property of the estate, specifically, the Cooperative Interests, with Mrs. Colman. On December 19, 2012, PJAMM filed a proof of claim asserting a secured claim in the amount of $157,222.75 for legal services.[26] In an addendum attached to the proof of claim, PJAMM explained that its claim for attorney's fees arising from the Enforcement Action was secured by a lien on the Cooperative Interests (the "Lien").[27] Although it is not referenced in PJAMM's claim, PJAMM filed a

---

[20] Agreed Facts, Docket No. 14 at ¶ 3.

[21] *Id.* at ¶ 1.

[22] *Id.* at ¶12.

[23] *Id.* at ¶ 13.

[24] *Id.* at ¶ 14.

[25] *See* Claim No. 6.

[26] *See* Claim No. 7-1.

[27] *Id.*

5

            Document      Page 6 of 16


financing statement under the New York Uniform Commercial Code (the "UCC-1") post-petition on August 29, 2012.[28]

The State Court issued its Final Statement of Decision on January 2, 2013, and a Judgment After Trial (the "Judgment") on January 11, 2013.[29] The Judgment is consistent with the State Court's preliminary statement of decision as described above.[30]

On March 15, 2013, the Trustee moved to sell the Cooperative Interests free and clear of all liens and encumbrances pursuant to 11 U.S.C. § 363 by private sale for $500,000.00. On March 21, 2013, the Trustee and Mrs. Colman filed a Stipulation of Settlement resolving their dispute regarding her claim. In relevant part, Mrs. Colman consented to a judgment in favor of the Trustee under 11 U.S.C. § 363(h) and agreed to cooperate with the Trustee's efforts to sell the Cooperative Interests. In exchange, Mrs. Colman would be paid $116,300.00 as an allowed, unsecured priority claim out of the sale proceeds upon the closing, and granted an allowed, unsecured non-priority claim in the amount of $190,366.30. After a hearing on April 17, 2013, I approved both the motion to sell and the Stipulation of Settlement. A formal order entered on April 24, 2013. The sale of the Cooperative Interests closed on May 30, 2013.[31]

On February 24, 2014, the Trustee commenced the present adversary proceeding against PJAMM, seeking: (1) a declaratory judgment that the Lien is unenforceable; (2) avoidance and preservation of the Lien pursuant to 11 U.S.C. §§ 544, 550, and 551; (3) avoidance of PJAMM's attempt to perfect the Lien by filing a UCC-1 pursuant to 11 U.S.C. § 549; and (4) disallowance of PJAMM's claim. On May 29, 2014, the parties filed a Joint Statement of Agreed Facts. On

---

[28] Agreed Facts, Docket No. 14 at ¶ 18; Ex. K, Docket No. 14-11.

[29] Agreed Facts, Docket No. 14 at ¶ 15; Ex. G, Docket No. 14-7.

[30] *Compare* Ex. D, Docket No. 14-4 *with* Ex. G, Docket No. 14-7.

[31] Agreed Facts, Docket No. 14 at ¶ 19.

August 18, 2014, they filed cross-motions for summary judgment accompanied by memoranda of law. Both parties filed their oppositions to the respective cross-motion on September 12, 2014. I heard the matters on October 1, 2014, and at the conclusion of oral arguments, took the matter under advisement.

### III. POSITIONS OF THE PARTIES

   A. The Trustee

The Trustee asserts that PJAMM has no rights in the proceeds from the sale of the Cooperative Interests for a plethora of reasons.

First, the Trustee argues that PJAMM does not have a valid charging lien because it failed to comply with California law. Specifically, he contends that PJAMM did not comply with Rule 3-300 of the Rules of Professional Conduct of the State Bar of California ("Rule 3-300") which requires that an attorney receive informed written consent before obtaining an adverse interest, such as a charging lien. The Trustee urges that failure to comply with that rule renders the Lien invalid.

Second, the Trustee argues that even if PJAMM has a valid charging lien under California law, the lien would only extend to the proceeds of a recovery by PJAMM as a result of its efforts. He asserts PJAMM did not obtain proceeds or a recovery on behalf of the Debtor in the Enforcement Action and as a result, the Lien did not attach to anything. The Trustee urges that lack of proceeds arising from a judgment in the Debtor's favor distinguishes this case from those cited by PJAMM. Instead, the Trustee emphasizes that the Cooperative Interests were awarded to the Debtor under the Settlement Agreement prior to the PJAMM's representation of the Debtor. To the extent that PJAMM sought in the Enforcement Action to compel Mrs. Colman to deed over her interest in the Cooperative Interests, the Trustee notes that its efforts

7

were unsuccessful as the State Court stayed her obligation to do so. As a result, the Trustee asserts that he was only able to sell the Cooperative Interests by first obtaining Mrs. Colman's consent to a judgment in his favor under 11 U.S.C. § 363(h).

Third, the Trustee cites *Isrin v. Superior Court of Los Angeles County*[32] for the proposition that an attorney's charging lien does not attach to the subject matter of the underlying litigation. Indeed, he asserts that the bankruptcy court in *In re Bouzas*,[33] which relied on the Supreme Court of California's decision in *Isrin*, concluded that an engagement letter substantially similar to the one in this case created a charging lien only as to the debtor's cause of action and did not create a lien on the real property that was the subject of the divorce action. Alternatively, the Trustee contends that the language of the Engagement Letter is insufficient to grant PJAMM an interest in the Cooperative Interests. Furthermore, even had the Engagement Letter identified the Cooperative Interests as collateral, the Trustee posits that it would not be a charging lien and thus not automatically perfected.

Fourth, relying on *Del Conte Masonry Co., Inc. v. Lewis*,[34] the Trustee argues that a charging lien under California law is an equitable lien created by agreement for the value of an attorney's services provided to the client upon a judgment obtained through the attorney's efforts. As such, he asserts, it is merely an equitable assignment for security, and not a power coupled with an interest. Therefore, the Trustee asserts that the Lien required an independent action to determine the existence and amount of the lien and to enforce it.

---

[32] *Isrin v. Super. Ct. of Los Angeles Cnty.*, 63 Cal. 2d 153, 403 P.2d 728 (1965).

[33] *Broach v. Michell (In re Bouzas)*, 294 B.R. 318 (Bankr. N.D. Cal. 2003).

[34] *Del Conte Masonry Co. v. Lewis*, 16 Cal. App. 3d 678, 94 Cal. Rptr. 439 (Ct. App. 1971).

8

Fifth, the Trustee asserts that PJAMM's failure to comply with applicable New York law regarding the perfection of interests in personal property renders the Lien, to the extent that it reached the Cooperative Interests at all, unperfected and avoidable pursuant to 11 U.S.C. §§ 544(a)(1) and (2). Moreover, he argues that PJAMM's post-petition filing of the UCC-1 is an avoidable post-petition transfer under 11 U.S.C. § 549. In any event, the Trustee urges that the Lien be avoided and preserved for the benefit of the estate pursuant to 11 U.S.C. § 550.

B. PJAMM

PJAMM explains that under California law, an attorney charging lien is created by contract and no notice is required to perfect the lien. PJAMM further asserts that "a judgment on the lien [is not] a condition precedent to its existence or viability."[35] Here, PJAMM emphasizes that the Engagement Letter specifically provides for an attorney's lien for unpaid fees on "**all claims and causes of action** that are the subject of the representation **and on the proceeds of any recovery**."[36] As it is undisputed that PJAMM filed a motion seeking to compel Mrs. Colman to transfer her interest in the Cooperative Interests to the Debtor, PJAMM contends it had a valid lien on the Debtor's right to obtain the conveyance, which later ripened into a conveyance during the bankruptcy case. Relying on *In re Albert*,[37] PJAMM stresses that it is irrelevant that the Trustee completed the work they started. Indeed, PJAMM suggests that its relationship to the Trustee is akin to successor counsel, which under state law does not affect its lien.[38]

---

[35] Memorandum of Law in Support of Defendant's Summary Judgment ("PJAMM Memo"), Docket No. 21 at 5.

[36] *Id.* (bold in original).

[37] *In re Albert*, 206 B.R. 636 (Bankr. D. Mass. 1997).

[38] *See Tracy v. Ringole*, 87 Cal. App. 549, 262 P. 73 (Cal. Ct. App. 1927).

9

PJAMM argues that California law does not define "a charging lien as something that 'attaches to a specific fund or other property created or secured through the attorney's efforts,'" and that any language to that effect in cases is merely dictum.[39] PJAMM also disputes the Trustee's assertion that the Lien did not attach to the underlying subject matter of the litigation, namely, the Cooperative Interests. Relying on *In re Bush*,[40] PJAMM contends that *In re Bouzas*[41] was wrongly decided and is premised on a faulty reading of the *Isrin* case.[42] In light of the Trustee's reliance on *In re Bouzas*, PJAMM also disputes his criticism of the Engagement Letter's alleged lack of specificity, and urges that the Cooperative Interests are clearly the proceeds from the claims and causes of action that are subject to its representation.

PJAMM argues that a California attorney's lien has priority over a subsequently obtained judgment lien and is effective against a subsequent bankruptcy trustee. To the extent that the Trustee relies on his status as a hypothetical lien creditor, PJAMM stresses that a lien creditor would not have been able to obtain a lien on Mrs. Colman's half of the Cooperative Interests. PJAMM also contends that the Trustee's characterization that a charging lien is merely an equitable lien is contrary to the weight of case law. In its brief, however, PJAMM states that a California charging lien is "more accurately . . . described as an equitable assignment of a judgment."[43]

---

[39] Memorandum of Law of Defendant in Opposition to Plaintiff's Motion for Summary Judgment ("PJAMM Opposition Memo"), Docket No. 33, at 3 (*quoting Fletcher v. Davis*, 33 Cal. 4th 61, 90 P.3d 1216 (2004)).

[40] *Kipperman v. Sutherland (In re Bush)*, 356 B.R. 28 (Bankr. S.D. Cal. 2006).

[41] *In re Bouzas*, 294 B.R. at 318.

[42] *Isrin v. Super. Ct. of Los Angeles Cnty.*, 63 Cal. 2d at 403.

[43] PJAMM Memo, Docket No. 21 at 4.

PJAMM asserts that it adequately complied with Rule 3-300 by including clear language in the Engagement Letter advising the Debtor to review the letter with another attorney. PJAMM notes that the Trustee does not address this language or suggest how it is deficient. Finally, PJAMM asserts that the Lien is controlled by California law, and that New York law is not relevant.

## IV. <u>DISCUSSION</u>

    A. <u>The Summary Judgment Standard</u>

Pursuant to Fed. R. Civ. P. 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[44] "A 'genuine' issue is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."[45] Material facts are those having the potential to affect the outcome of the suit under the applicable law.[46] The United States Court of Appeals for the First Circuit has explained this provision to mean that the absence of a material factual dispute is a "condition necessary," but not a "sufficient condition" to summary judgment.[47] Therefore, a party seeking summary judgment must show that it is entitled to judgment as a matter of law.[48]

---

[44] Fed. R. Civ. P. 56(a) made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[45] *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d. 1, 2 (1st Cir. 1999) (*quoting Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 428 (1st Cir. 1996)).

[46] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

[47] *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 764 (1st Cir.1994).

[48] *Id.*

B. <u>Whether the Lien Attached to the Cooperative Interests</u>

Determination of contract or property rights by the bankruptcy courts ordinarily is controlled by state law.[49] Here, the Engagement Letter is governed by California law because it was entered into in California.[50] From the outset, I note that California courts have suggested that a California attorney's lien, also referred to as a charging lien, is not really a "lien" at all, but "an equitable right to have the fees and costs due to [the attorney] for services in a suit secured to him out of the judgment or recovery in the particular action," with the attorney "being regarded as an equitable assignee of the judgment" to the extent of the value of those services.[51] It is premised on the idea "that a party should not be allowed to appropriate the whole of a judgment in his favor without paying for the services of his attorney in obtaining such judgment."[52]

"Unlike other jurisdictions, in California, an attorney's lien is created only by contract and therefore 'is not created by the mere fact that an attorney has performed services in a case.'"[53] "As a consequence, the existence and scope of an attorney's lien necessarily must be determined by examining the language of the contract allegedly giving rise to the lien."[54] Moreover, "the attorney's right to the specified property comes into existence at the time of the attorney-client agreement,"[55] and "a judgment on the lien is not a condition precedent to its

---

[49] *See Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

[50] *In re Bush*, 356 B.R. at 34.

[51] *Tracy v. Ringole*, 87 Cal. App. 549, 551, 262 P. 73, 74 (Cal. Ct. App. 1927).

[52] *Id.*

[53] *Clinton v. Adams*, No. CV10-09476-ODW PLAX, 2014 WL 6896021, at *4 (C.D. Cal. Dec. 5, 2014) (*quoting Fletcher v. Davis*, 33 Cal. 4th 61, 66, 90 P.3d 1216, 1219 (2004)). *See Cetenko v. United California Bank*, 30 Cal. 3d 528, 532, 638 P.2d 1299 (1982).

[54] *Clinton v. Adams*, 2014 WL 6896021, at *4. *See In re Bush*, 356 B.R. at 35.

[55] *Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 292-93, 136 Cal. Rptr. 3d 97, 109 (2011), *as modified* (Jan. 17, 2012).

existence or viability."[56]  "Nonetheless, when the attorney's lien is tied to the client's contingent recovery of property . . . the attorney cannot enforce the lien until the contingency occurs."[57]  For this reason, most courts characterize a charging lien as attaching to "a specific fund or other property created or secured through the attorney's efforts."[58]

Here, the Engagement Letter contains three operative words: proceeds, recovery, and award.  These words are consistent with the idea that PJAMM would look to a "specific fund" obtained by its efforts for its compensation; namely, the Cooperative Interests.  PJAMM insists that the parameters of a charging lien under California law are not defined by a specific fund, but that is precisely what the Engagement Letter expressly contemplates.  By its own terms, the Engagement Letter grants a lien on "all claims and causes of action" subject to the representation, enforcement of which requires as a practical matter a liquidation of those claims by settlement or judgment, "all proceeds of any recovery obtained," and "any money or property awarded."[59]  Essentially, PJAMM's argument seemingly conflates the naked theoretical existence of a charging lien with its enforceability against particular property.  Ultimately, the question before me is whether the Cooperative Interests constitute proceeds, a recovery, or an award.  I find that they do not.

The Cooperative Interests were awarded to the Debtor by the Settlement Agreement, several years before PJAMM was retained.  Indeed, the Settlement Agreement provided that

---

[56] *Saltarelli & Steponovich v. Douglas*, 40 Cal. App. 4th 1, 6, 46 Cal. Rptr. 2d 683, 687 (1995) (citations omitted).

[57] *Little v. Amber Hotel Co.*, 202 Cal. App. 4th at 293.

[58] *Lynberg & Watkins v. Seror (In re Alter)*, Adv. No. SV–05–01534–GM, 2006 WL 6810925, at *3 (B.A.P. 9th Cir. Aug. 15, 2006). *See Fletcher v. Davis*, 33 Cal. 4th at 66 ("An attorney's lien upon the fund or judgment which he has recovered for his compensation as attorney in recovering the fund or judgment . . . is denominated a charging lien.").

[59] Ex. C, Docket No. 14-3 at 4.

13

"[Mrs. Colman] agrees to and by the Agreement she *does hereby sell, transfer, assign, quitclaim and convey* unto Robert as his sole and separate property" the Cooperative Interests.[60] Admittedly, Mrs. Colman did not take the required steps to convey title to the Debtor, but it is clear that the Settlement Agreement granted him an equitable interest in her share of the Cooperative Interests. Therefore, the Debtor retained PJAMM to, *inter alia*, compel the conveyance of the title interest.

While the Enforcement Action did not go well for the Debtor, PJAMM nevertheless declares victory, noting that the Judgment does in fact provide that Mrs. Colman will "sign over the New York apartment."[61] Despite PJAMM's attempt to conjure a silver lining, its position ignores the reality of the situation. Pursuant to the Settlement Agreement, Mrs. Colman always had an "obligation to sign over the New York apartment,"[62] but the Judgment stayed that obligation until the Debtor paid her all amounts due under the Judgment. Thus, the net effect of the Enforcement Action was to place the sought after conveyance even farther from the Debtor's reach by making it contingent on the payment of several hundred thousand dollars. I emphasize this point not to question the value of PJAMM's services in the Enforcement Action—I have no reason to believe they were anything less than competent—but to stress that the Judgment did not award the Debtor anything or yield any proceeds or recovery. The title conveyance of the Cooperative Interests did not occur, and nor will it ever given the Trustee's sale.

PJAMM attempts to bypass this problem by arguing the Trustee, who it views as its successor counsel, "settled" the dispute. This, however, improperly characterizes the Trustee's

---

[60] Ex. A, Docket No. 14-1 at ¶ 3(B)(1) (emphasis added).

[61] Ex. D, Docket No. 14-4 at 7:4-11.

[62] *Id.*

settlement of Mrs. Colman's claim, including obtaining her consent to entry of a judgment against under 11 U.S.C. § 363(h), as a continuation of the Enforcement Action. To the contrary, the Enforcement Action was taken to a final, non-appealable judgment, thus fixing the Debtor and Mrs. Colman's respective rights. The fact that Mrs. Colman's claim, which was awarded in the Enforcement Action, was submitted to the bankruptcy court for adjudication in the claims allowance process did not reopen the prior issues decided by the State Court. Indeed, such re-litigation is barred by the *Rooker-Feldman* doctrine.[63] In contrast, the Trustee's settlement is premised on the proper treatment of Mrs. Colman's claim given the Bankruptcy Code's priority scheme contained within 11 U.S.C. § 507(a), the Trustee's powers to avoid certain liens and post-petition transfers granted by 11 U.S.C. §§ 544 and 549, and the Trustee's ability to sell both the estate's interest and the co-owner's interest in property pursuant to 11 U.S.C. § 363(h). Moreover, given the distinct nature of the proceeding in which the Trustee's settlement arose, PJAMM services, which were rendered pre-petition in the Enforcement Action, conferred no benefit to the estate.[64]

In sum, PJAMM has not demonstrated that the Cooperative Interests fall within the Lien granted by the Engagement Letter because they were not recovered, awarded, or are otherwise the proceeds of the Enforcement Action. Those operable terms unambiguously imply the existence of an affirmative or tangible benefit flowing to the Debtor in the Enforcement Action

---

[63] The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, the Supreme Court of the United States held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. 263 U.S. at 415-16. In *Feldman*, the Supreme Court held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. 460 U.S. at 486-87.

[64] *Cf. In re Albert*, 206 B.R. at 641 (holding that notwithstanding the Chapter 7 trustee's post-petition settlement of state court litigation, attorney had a valid charging lien in settlement proceeds for the attorney's prepetition services where services were beneficial to the estate).

15

which indisputably did not occur.[65] Therefore, the Trustee is entitled to judgment as a matter of law and I need go no further.[66]

## V. **CONCLUSION**

In light of the foregoing, I will enter an order denying PJAMM's motion for summary judgment and granting the Trustee's motion for summary judgment.

*William C. Hillman*

———————————————
William C. Hillman
United States Bankruptcy Judge

Dated: December 24, 2014

Counsel Appearing:

    Kathleen R. Cruickshank, Murphy & King P.C., Boston, MA,
        for the Trustee
    Joseph S.U. Bodoff, Rubin and Rudman LLP, Boston, MA,
        for PJAMM

---

[65] To the extent that PJAMM seeks to create an ambiguity to its benefit, the terms of the Engagement Letter should be construed against the drafter.

[66] Because I conclude that the Lien is not enforceable against the Cooperative Interests, avoidance of the Lien is unnecessary.